UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

| | | |
|---|---|---|
| RICHARD HYLLAND, | : | CIV. NO. 16-4060 |
| Plaintiff, | : | |
| v. | : | |
| RUSSELL FLAUM, | : | |
| Defendant. | | |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

**BRIEF IN SUPPORT OF DEFENDANT'S RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. §1404(a)**

Defendant Russell Flaum ("Flaum"), by his attorneys, Woods Fuller Shultz & Smith, P.C., and Schoenberg, Finkel, Newman & Rosenberg, LLC, respectfully files this brief in support of his motion to dismiss this action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, to transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). In support of his Motion, Flaum states as follows:

## I.   INTRODUCTION

Plaintiff Richard Hylland ("Hylland") served a complaint (the "Complaint") upon Flaum, alleging alienation of affection of Hylland's wife, Traci Hylland ("Ms. Hylland"). Flaum is a resident of Illinois. The Hyllands are alleged to be residents of South Dakota.  Flaum and the Hyllands were, at all relevant times, members of a country club in Indian Wells, California.

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

Thus, both Flaum and the Hyllands were frequently in California. Flaum met Ms. Hylland at the country club in California.  All of their personal interactions occurred in California. Any contact between the two of them occurred in California or through telephone calls and emails when Flaum was in Illinois.

Flaum has never stepped foot in South Dakota and has never conducted any business in South Dakota. Hylland alleges that Flaum is subject to jurisdiction in South Dakota based solely upon cell phone calls, texts and emails and gifts sent through the mail.  The Eighth Circuit has repeatedly held that interstate facilities such as telephone and mail are "secondary or ancillary" factors which "cannot alone provide the minimum contacts required by due process." *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 923 (8th Cir.1995). Since Flaum does not have sufficient minimum contacts with South Dakota to be subject to personal jurisdiction there, this matter should be dismissed for lack of personal jurisdiction.

In the alternative, this action should be transferred to the United States District Court for the Central District of California. As set forth more fully below, both Hylland and Flaum have long-standing connections to California and maintain residences there. The operative facts underlying Hylland's claims all occurred in California, the vast majority of the witnesses are located there and California law should apply to Hylland's claim against Flaum.

## II.    FACTUAL BACKGROUND

Hylland's Complaint alleges that he is a resident of South Dakota and that Flaum is a resident of Illinois. (Complaint, ¶¶ 1-2).  Hylland married Ms. Hylland in Denver, Colorado on February 28, 1985, and then again in South Dakota on July 6, 1985. (Complaint, ¶ 4). Hylland alleges that in the "spring of 2015," Flaum alienated Ms. Hylland's affections from Hylland.

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

(Complaint, ¶ 6). Hylland alleges that, to his "knowledge and belief," Flaum "sent in excess of 100 emails to Ms. Hylland while she was in South Dakota, instigated Face Time Video meetings with Ms. Hylland while she was in South Dakota, sent gifts through the mail to Ms. Hylland while she was in South Dakota, and talked to Ms. Hylland via telephone while she was in South Dakota over 200 times." (Complaint, ¶ 8).

The Affidavit of Flaum ("Flaum Aff.") is attached as Exhibit A to the separately filed motion to dismiss. Flaum is a resident of Chicago, Illinois and has been a resident of the State of Illinois since 1979.  He also has a home in Indian Wells, California.  (Flaum Aff. ¶¶ 2-3). Until April, 2016, Flaum was a member of the Indian Wells Country Club located in Indian Wells, California. (Flaum Aff. ¶ 3).  The Hyllands have been and continue to be members of the Indian Wells Country Club. (Flaum Aff. ¶ 5). Since 2009, the Hyllands have had, and continue to maintain, a residence in Indian Wells, California.  They spend most of each year in California. (Flaum Aff. ¶¶ 5, 17).

Flaum first met Ms. Hylland at the Indian Wells Country Club in or about the winter of 2014. (Flaum Aff. ¶ 6). In or about February, 2015, Ms. Hylland and Flaum first began playing tennis together in California. They played both singles and doubles. They played together eight to nine times in February, 2015, six times in March, 2015, eight times in April, 2015, and once in May, 2015. The majority of these tennis sessions were at the Indian Wells Tennis Gardens. They also played two or three times at the Hyatt Resort in Indian Wells, California, and once at the Monterrey Country Club in Palm Desert, California.  (Flaum Aff. ¶ 7).

Flaum also met Ms. Hylland and some of her friends at the BNP Paribas Tennis Open in Indian Wells on two occasions in mid-March of 2015. (Flaum Aff. ¶ 8). Flaum watched Ms.

Case No.: CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

Hylland participate in a USTA tennis tournament at the Las Palmas Tennis Club in Rancho Mirage, California on one day in mid-March of 2015. (Flaum Aff. ¶9). Flaum went to brunch three times with Ms. Hylland after completing tennis during the months of March and April, 2015 in La Quinta, California. (Flaum Aff. ¶ 10). Ms. Hylland and Flaum met once in late March, 2015 at Pete Carlson's Tennis Shop in Palm Desert, California. (Flaum Aff. ¶ 11). Ms. Hylland and Flaum also met one evening on April 10, 2015, in Beverly Hills, California, and one morning in Palm Desert, California. (Flaum Aff. ¶¶ 12-13). At her request, on May 1, 2015, Flaum met with Ms. Hylland and her therapist in Palm Desert, California. (Flaum Aff. ¶ 14).

The last time that Flaum saw Ms. Hylland was on May 6, 2015 in Indian Wells, California. Flaum never saw Ms. Hylland outside of California. Between May 7, 2015 and May 23, 2015, Flaum communicated with Ms. Hylland in California electronically either through calls and texts to and from her cell phone, or through emails. (Flaum Aff. ¶ 15). On or about May 23, 2015, Ms. Hylland left California, and Flaum's only contact with her thereafter was electronically, through either calls and texts to and from her cell phone, or through emails. The last contact that Flaum had with Ms. Hylland was on or about July 10, 2015. (Flaum Aff. ¶ 16).

The Hyllands continue to reside part time in Indian Wells, California. In or about November, 2015, Flaum returned to Indian Wells, California, and the Hyllands were there at that time. Flaum had no contact with Ms. Hylland. Flaum saw Hylland himself in Indian Wells, California during the last week of April, 2016. (Flaum Aff. ¶ 17). Flaum was served with summons in this case in California. (Flaum Aff. ¶ 17).

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

## THIS COURT LACKS JURISDICTION OVER THE DEFENDANT.

When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant. *Id.* The plaintiff must establish that "a substantial connection between the defendant and the forum state exists." *Porter v. Berall,* 293 F.3d 1073, 1075 (8th Cir. 2002)

"Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (*quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 464, 474–477, 105 S.Ct. 2174 (1985)).[1]   As stated by the Eighth Circuit:

> "To maintain personal jurisdiction, defendant's contacts with the forum state must be more than 'random,' 'fortuitous,' or 'attenuated.' *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Sufficient contacts exist when 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In assessing the defendant's reasonable anticipation, there must be ''some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'' *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). Jurisdiction is proper where the contacts proximately result from actions by the defendant itself that create a 'substantial connection' with the forum State. *Id.*

---

[1]Because the South Dakota long-arm statute confers personal jurisdiction to the full extent permissible under the due process clause of the Fourteenth Amendment (*Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir. 1987)), Flaum will address the due process requirements.

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

*Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

Personal jurisdiction can be either general or specific. *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir.1994). "If a court has general jurisdiction over a defendant, it is said the defendant's affiliations with the forum State 'in which suit is brought are so constant and pervasive 'as to render [the defendant] essentially at home in the forum State.' " *Estate of Moore v. Carroll*, 2016 WL 430486 at *3 (D.S.D. Feb. 3, 2016) (*quoting Daimler AG v. Bauman,* U.S. 134 S.Ct. 746, 751 (2014)) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown,* U.S. 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). "Alternatively, 'specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state.' " *Id. (quoting Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)). "For personal jurisdiction under a theory of specific jurisdiction to exist, therefore, the cause of action must arise or relate to the defendant's actions within the forum state." *Id.*

The Eighth Circuit "applies a five-factor test in analyzing the constitutional requirements needed for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Digi-Tel Holdings, Inc.*, 89 F.3d at 522-23. "The first three factors carry significant weight, while the final two are of less importance." *Estate of Moore v. Carroll,* 2016 WL 430486 at *3. "The Eighth Circuit has further stated that the third factor is meant to draw a distinction between specific jurisdiction and general jurisdiction." *Id.* "Because of the

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

interrelationship of the factors, the Eighth Circuit has regularly considered them, especially the first three factors, together." *Id*.

All of Flaum's contacts occurred either in California or Illinois. He met Ms. Hyland in California. Both the Hyllands and Flaum maintained residences in California.  Any alleged affair occurred in California. Flaum made any cell phone calls and sent any text messages and email communications from either California or Illinois. He was never present in South Dakota.

Hylland incorrectly alleges that personal jurisdiction over Flaum is proper because Flaum made cell phone calls, sent emails or text messages and mailed gifts to Ms. Hylland after the Hyllands had decided to travel back to South Dakota. The Eighth Circuit has repeatedly held that contacts by phone and mail, standing alone, are generally "insufficient to justify exercise of personal jurisdiction under the due process clause." *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006) (*quoting Porter,* 293 F.3d at 1076); *see also, Mountaire Feeds, Inc. v. Agro Impex, S. A.*, 677 F.2d 651, 656 (8th  Cir. 1982); *Scullin Steel Co. v. National Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982).  "The use of interstate facilities, such as telephones or mail, is a 'secondary or ancillary' factor 'and cannot alone provide the minimum contacts required by due process.'"  *Bell Paper Box,* 53 F.3d at 923 (Citations and internal quotation marks omitted). Letters, emails, faxes and telephone contacts may, in conjunction with other contacts, support the exercise of personal jurisdiction, but such contacts alone are insufficient to satisfy due process. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1388 (8th Cir.1995); *see also Sojka v. Loyalty Media LLC*, 2015 WL 2444506 at *3 (N.D. Ill. May 20, 2015)("[T]ext message 'contacts' are random, fortuitous and attenuated, and cannot form the basis for specific personal jurisdiction."). "[M]ere communications with a forum's

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

resident(s) is insufficient to establish sufficient minimum contacts, and email/telephone/fax communications may only be used to *support* the exercise of personal jurisdiction—'they do not themselves establish jurisdiction.'" *Yellow Brick Rd., LLC v. Childs*, 36 F. Supp. 3d 855, 872 (D. Minn. 2014) (*quoting Digi–Tel Holdings, Inc.* 89 F.3d at 523) (Italics in original).

Personal jurisdiction over Flaum cannot be based upon the Hyllands' decision to relocate to South Dakota. "[I]t is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980). The "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Fastpath, Inc.*, 760 F.3d at 823 (*quoting Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014)). As stated by the United States Supreme Court:

> "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."

*Walden*, 134 S. Ct. at 1122.

In *Digi-Tel Holdings, Inc.*, the Eighth Circuit held that there was no personal jurisdiction in Minnesota over a foreign corporation, even where (1) there were "numerous letters and faxes and ... several telephone calls to Minnesota" by the defendant; (2) there was a choice-of-law provision in the contract that favored Minnesota; (3) sample cellular phones (the subject of the contract) were shipped to Minnesota; (4) the foreign defendant's parent company applied for a Minnesota copyright; (5) the foreign defendant's parent company attended a meeting in Minnesota with the plaintiff; and (6) the foreign defendant's parent company made a settlement offer to the plaintiff at the Minnesota meeting. 89 F.3d at 523–25. The court reasoned that all

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

seven of the face-to-face meetings regarding the contract had occurred in Singapore and that no part of the contract was to be performed in Minnesota. *Id.* at 525. The Court stressed that "the negotiations, meetings, production, and delivery were all centered in Singapore." *Id.* The Court concluded that "[t]he contacts with Minnesota appear at best as inconsequential rather than substantial ...." *Id.*

Similarly, in this case, any contacts that Flaum had with South Dakota were "random," "fortuitous," and "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183. Flaum did not choose to have any connection with South Dakota. Rather, the **Hyllands** decided to travel back to South Dakota and, thus, Ms. Hylland received and herself sent cell phone calls, text messages and emails there. Ms. Hylland could have received or sent those electronic communications any place to which she decided to travel.   As noted in *Proud Veterans, LLC v. Ben-Menashe*, 2014 WL 791200 (D. Kan. Feb. 27, 2014):

> "In the age of cell phones and call forwarding, calling the telephone number of someone who is in Kansas at the time is not evidence of any purposeful activity directed toward the forum state. Gnemi's presence in Kansas at the time he answers his cell phone is fortuitous or attenuated, and the use of modern telephone contacts that are not intrinsically tied to a physical location do not necessarily constitute purposeful availment. Telephone contacts lack constitutional significance under the minimum contacts doctrine due to the geography-defying nature of twenty-first century telephone communications."

2014 WL 791200, at *8.

The final two, less important, factors of the Eighth Circuit's five-part test also do not favor personal jurisdiction. While South Dakota has an interest in providing its residents with a forum, that interest "cannot make up for the absence of minimum contacts." *Digi-Tel Holdings, Inc.*, 89 F.3d at 525. As discussed below, the convenience of the parties favors the transfer of this case in California.

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

## IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED PURSUANT TO §1404(a)

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense * * *.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964) (*quoting Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27, 80 S.Ct. 1470, 1474-1475 (1960)).

This case could have been brought in the United States District Court for the Central District of California. Venue would be proper there because that is where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(a). Indeed, all of the operative facts involved in this case occurred in the Central District of California.

"[A] district court must engage in an analysis of all other factors relevant to venue, incorporating an 'individualized, case-by-case consideration of convenience and fairness.'" *Van Buren Lodging, LLC v. Wingate Inns Int'l, Inc.*, 2011 WL 938306 at *1 (D.S.D. Mar. 16, 2011) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988)). "If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50, 102 S. Ct. 252, 263 (1981).

In determining convenience, the Court may consider: "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997). In considering the interests of justice, the Court may consider: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Id.* "In weighing these factors the district court must balance the preference accorded plaintiff's choice of forum with the burdens of litigating at an inconvenient venue." *Mizokami Bros. of Arizona v. Mobay Chem. Corp.*, 660 F.2d 712, 718 (8th Cir. 1981). "This evaluation is addressed to the experience and insight of the trial judge and is within his initial discretion." *Id.*

Section 1404(a) accords broad discretion to the District Court, and plaintiff's choice of forum is only one relevant factor for its consideration. *Stewart Org., Inc.*, 487 U.S. at 31, 108 S.Ct. 2239 at 2245 (1988). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d at 695. "This 'general' practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple, Inc.,* 602 F.3d 909, 913 (8th Cir. 2010). "When that assumption does not hold—as here, where the plaintiffs have chosen an inconvenient forum—the plaintiffs' choice of forum fades in importance." *Evans v. Breg, Inc.*, 2010 WL 2985691, at *2 (D. Minn. July 26, 2010). Furthermore, "while such a shift [in inconvenience from defendants to plaintiffs] could not *alone* support transfer, neither does it

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

alone defeat transfer." *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1180 (D. Minn. 1996).

In this case, all of the operative facts occurred in California. "[W]hile a plaintiff's choice of forum is 'ordinarily given consideration ... where operative facts underlying the cause of action did not occur within the forum chosen by plaintiff, the choice of forum is entitled to less consideration.'" *Sund v. Carpenter,* 2014 WL 6386813 at *3 (D.S.D. Nov. 14, 2014) (*quoting Rix v. Wells*, 2008 WL 4059593 at *2 (N.D. Fla. Aug. 22, 2008)); *see also*, *Hormel Foods Corp. v. Medina & Medina, Inc.*, 2006 WL 2735491, at *2 (D. Minn. Sept. 25, 2006) ("However, transfer may be favored when the operative facts of the case occurred in the proposed forum."); *Morris v. Safeco Ins. Co.*, 2008 WL 5273719, at *4 (N.D. Cal. Dec. 19, 2008)("While courts generally defer to plaintiff's choice of forum, [citation], the deference given to plaintiff's choice of forum is slight, if any, when, as here, the plaintiff's chosen forum lacks a significant connection to the events that gave rise to the complaint.").

Hylland cannot claim that California is less convenient for him than South Dakota. He and his wife frequently travel to California and have and continue to maintain a residence there. *Cf.*, *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) ("Especially in a case such as this, where plaintiff has traveled extensively to Colorado from Minnesota in the past, the net inconvenience to the parties will be less if this case were transferred to Colorado.")[2]

Unlike Hylland, who has long-standing connections to California and who cannot claim inconvenience, Flaum has no ties to South Dakota. Requiring him to litigate there will greatly

---

[2] "The location of counsel is not a significant factor when deciding a motion to transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 779 (N.D. Cal. 2014)

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

inconvenience him. "A defendant's 'choice of forum must be accorded some weight' if the defendant presents legitimate reasons for preferring to litigate the case in the transferee district." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015) (*quoting Nat'l Wildlife Fed'n v. Harvey*, 437 F.Supp.2d 42, 48 (D.D.C.2006)).  Here, all of the operative events occurred in California. Both the Hyllands and Flaum have long-standing connections to California and Flaum has never been to South Dakota.

"The convenience of witnesses is '[p]robably the most important factor' to be considered on a motion for change of venue." *Dakota Truck Underwriters v. Annett Holdings, Inc*., 2006 WL 3391107, at *2 (D.S.D. Nov. 22, 2006) (*quoting* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3851 at 264 (1976)). As set forth in the affidavit of Flaum, the vast majority of witnesses will be from California or have ties to California. (Flaum Aff. ¶ 18).

Finally, the interests of justice favor hearing this case in California. Hylland essentially complains that his wife and Flaum had an extra-marital affair in California. The choice of law and advantages of having a local court determine questions of local law favor California.  "The most significant relationship test, as set forth in the Restatement (Second) of Conflict of Laws § 145 (1971), is now the law in South Dakota." *Estate of Lindsay v. Moller*, 493 N.W.2d 708, 709 (S.D. 1992); see also, *Penney v. Praxair, Inc.*, 116 F.3d 330, 333, n. 4 (8th Cir. 1997) ("South Dakota has adopted the most significant relationship test as its choice of law rule in tort cases."). Comment (c) of the Section 145 of the Restatement, specifically adopted by the South Dakota Supreme Court, provides:

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

> "The purpose sought to be achieved by the relevant tort rules of the interested states, and the relation of these states to the occurrence and the parties, are important factors to be considered in determining the state of most significant relationship. This is because the interest of a state in having its tort rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and by the relation of the state to the occurrence and the parties. **If the primary purpose of the tort rule involved is to deter or punish misconduct, as may be true of rules permitting the recovery of damages for alienation of affections and criminal conversation, the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship** (see § 154, Comment *c*)."

Restatement (Second) of Conflict of Laws § 145 (1971). (Emphasis added).  Section 154 of the

Restatement specifically provides:

> "The local law of the state where the conduct complained of principally occurred determines the liability of one who interferes with a marriage relationship, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

Restatement (Second) of Conflict of Laws § 154 (1971).  Because California law will govern, in

the alternative to dismissal, this case should be heard in a California Court.

WHEREFORE, Defendant Russell Flaum respectfully requests that this action be

dismissed, or in the alternative, transferred to the United States District Court for the Central

District of California.

Case No.:  CIV. 16-4060
Brief in Support of Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or,
in the Alternative, to Transfer Pursuant to 28 U.S.C. 1404(a)

Dated this 31st day of May, 2016.

WOODS, FULLER, SHULTZ & SMITH P.C.

By  /s/ Jennifer L. Van Anne
　　　Jennifer L. Van Anne
　　　300 South Phillips Avenue, Suite 300
　　　Post Office Box 5027
　　　Sioux Falls, SD 57117-5027
　　　Phone (605) 336-3890
　　　Jennifer.VanAnne@woodsfuller.com

SCHOENBERG, FINKEL, NEWMAN
& ROSENBERG, LLC

G. Terence Nader
Norman T. Finkel
22 South Riverside Plaza, Suite 2100
Chicago, IL 60606-6101
(312) 648-2300
Terry.Nader@sfnr.com
Norm.Finkel@sfnr.com

ATTORNEYS FOR DEFENDANT

{02279063.1}                                    15