UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RICHARD HYLLAND,<br><br>Plaintiff,<br><br>vs.<br><br>RUSSELL FLAUM,<br><br>Defendant. | 4:16-CV-04060-RAL<br><br>OPINION AND ORDER DENYING MOTION TO DISMISS AND MOTION TO TRANSFER VENUE |

Richard Hylland sued Russell Flaum in South Dakota for alienating the affection of Richard's wife Traci Hylland.[1] Flaum moved to dismiss for lack of personal jurisdiction, arguing that he has never been to South Dakota and does not have the necessary minimum contacts with South Dakota. Because Flaum intentionally directed his conduct at South Dakota, and because the alleged effects of this conduct were suffered in South Dakota, this Court has personal jurisdiction over Flaum for the alleged alienation of affection that occurred while Traci was in South Dakota.

## I. Facts[2]

The Hyllands married in South Dakota in 1985. Doc. 1-3 at ¶ 4; Doc. 14 at ¶ 2. They are South Dakota residents but have maintained a home in Indian Wells, California since 2009. Doc. 1-3 at ¶ 1; Doc. 10-1 at ¶ 5. Flaum, an Illinois resident who also maintains a home in Indian

[1]To avoid confusion, this Court will refer to the Hyllands by their first names.

[2]This Court makes no conclusive factual findings at this time and draws the facts from the complaint and affidavits and exhibits submitted to this point.

Wells, California, first met Traci at the Indian Wells Country Club in late 2014. Doc. 10-1 at ¶¶ 2–3, 6; Doc. 1-3 at ¶ 2.

In February 2015, Flaum and Traci began playing tennis together at various country clubs in California. Doc. 10-1 at ¶ 7. They continued playing tennis in March and April of 2015, but also began going out to eat, attending tennis tournaments, and meeting up in either Palm Desert or Beverly Hills, California. Doc. 10-1 at ¶¶ 7–13. Apparently at Traci's request, Flaum met with Traci and her therapist on May 1, 2015, in Palm Desert. Doc. 10-1 at ¶ 14. The last time Flaum reportedly saw Traci in person was on May 6, 2015. Doc. 10-1 at ¶ 15.

Traci returned to South Dakota on May 17, 2015, but Flaum continued to communicate with her. From May 17, 2015 to July 10, 2015, while Traci was in South Dakota, Flaum telephoned Traci nearly two hundred times and sent her over thirty-five emails. Doc. 14 at ¶¶ 3–4; Docs. 14-1, 14-2. Many of the emails were romantic in nature, with Flaum telling Traci that he loved her rather than his wife, that Traci should be "strong today in the knowledge that [her] future will be bright and full of love," that he would make Traci happy "going forward," and that he was pleased at being part of the "big step toward a happier and healthier existence" Traci had taken. Doc. 14-2 at 2, 5–6, 25–26, 33, 38. Flaum in other emails asked Traci to "Facetime"[3] and to send him pictures of herself. Doc. 14-2 at 10, 11, 14, 16, 35, 37. In still another email, Flaum encouraged Traci to fly to Illinois to meet him on a connecting flight. Doc. 14-5.

In addition to the telephone calls and emails, Flaum sent some t-shirts bearing the letters "RF"[4] to Traci at her home in Sioux Falls, South Dakota. Doc. 14 at ¶ 5; Doc. 14-3 at 2–5. He also contacted Traci's friends in South Dakota, telephoning one friend twice and video chatting

---

[3]Facetime is a cell phone application that allows users to communicate over video.
[4]The "RF" t-shirts were from legendary tennis player Roger Federer's endorsed line of clothing, but "RF" are also the initials of Russell Flaum.

with Traci and three of her friends on another occasion. Doc. 14 at ¶¶ 6, 8; Doc. 14-4; Doc. 14-6.

In July 2015, Richard mailed a package concerning Flaum's relationship with Traci to Flaum's wife and children and others in Illinois. Docs. 19, 19-1, 19-2. The package alleged that Traci and Flaum engaged in sexual intercourse in California and contained what appeared to be messages Flaum sent to Traci then discovered by Richard. Docs. 19-1, 19-2. The messages and package at the very least raise a question of whether actions alienating Traci's affection occurred in California in the first instance. At the hearing, the parties advised that the Hyllands remain married, although with marital difficulties, and that Flaum remains married to his wife.[5]

Richard sued Flaum in South Dakota state court in March 2016. Doc. 1-3. He alleged in his complaint that he and Traci had lived together and "had affection toward each other" until "approximately the summer of 2015, when Defendant Flaum commenced to acquire an improper and undue influence over" Traci. Doc. 1-3 at ¶ 5. According to the complaint, Flaum alienated Traci's affection from Richard "sometime on or about the spring of 2015." Doc. 1-3 at ¶ 6. Flaum removed the case to this Court, Doc. 1, and moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer the case to California under 28 U.S.C. § 1404(a), Doc. 10. At the hearing on Flaum's motion, Richard through counsel acknowledged that he claims that the alienation of affection tort was committed after Traci returned to South Dakota in mid-May of 2015 and that Richard is making no claim in this case that any of the conduct in California supports a cause of action or recovery here.

## II. Analysis

### A. Personal Jurisdiction

[5]The parties should give considerable thought to whether any benefit from this case outweighs the likely monetary and personal costs from this lawsuit.

The showing a plaintiff must make when the defendant contests personal jurisdiction under Rule 12(b)(2) depends on the stage of the case and the method the court employs to resolve the jurisdictional dispute. See K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). At trial or after an evidentiary hearing, the plaintiff must prove personal jurisdiction by a preponderance of the evidence. Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015); Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). But when, as here, the court limits its review of a Rule 12(b)(2) motion solely to affidavits and other written evidence, the plaintiff "need only make a prima facie showing of [personal] jurisdiction." Dakota Indus., 946 F.2d at 1387. "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." K-V Pharm. Co., 648 F.3d at 592 (internal marks and citations omitted). This Court construes the evidence the parties submitted in the light most favorable to Hylland and resolves all factual disputes in his favor. Id.

A federal court sitting in diversity may exercise jurisdiction over nonresident defendants only if both the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause are satisfied. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991). Because South Dakota's long-arm statute confers jurisdiction to the full extent permissible under the Due Process Clause, the question here is whether asserting personal jurisdiction over Flaum comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (applying South Dakota law).

Personal jurisdiction under the Due Process Clause may be either general or specific. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924–25 (2011). Courts with

general jurisdiction over a defendant may hear "any and all claims" against the defendant, even if those claims are unrelated to the defendant's contacts with the forum state. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (quoting Goodyear, 564 U.S. at 919). For general jurisdiction to exist, the defendant's contacts with the forum state must be "so 'continuous and systematic'" that the defendant is "essentially at home" there. Goodyear, 564 U.S. at 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Flaum's contacts with South Dakota fall far short of the sort of continuous and systematic presence necessary for general jurisdiction. Specific jurisdiction, by contrast, may be based on a defendant's solitary or irregular contact with the forum state. Daimler, 134 S. Ct. at 754. Unlike general jurisdiction, however, specific jurisdiction is limited to suits arising out of or relating to the defendant's contact with the forum state. Goodyear, 564 U.S. at 919.

Courts may exercise specific jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts" with the state such that having to defend a lawsuit there "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (quotation omitted). These minimum contacts must be based on "some act by which the defendant purposefully avails" himself of the forum state "such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–75 (1985) (quotations omitted). It is the defendant, rather than the plaintiff or a third party, who must establish the minimum contacts in the forum state. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014). Moreover, the defendant's contacts must be "with the forum State itself, not . . . with persons who reside there." Id.; see also id. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the

'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting Burger King, 471 U.S. at 475)).

Under Eighth Circuit precedent, five factors guide evaluating whether the constitutional requirements for personal jurisdiction have been met: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522–23 (8th Cir. 1996) (footnote omitted). The first three factors are the most important while the last two are merely secondary. Id. at 523.

Flaum argues that this case should be dismissed because the emails, phone calls, and gifts he sent or made to Traci do not constitute minimum contacts with South Dakota. The general jurisprudence in the Eighth Circuit is that although emails, phone calls, and mailings may count towards the required minimum contacts, Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1433–34 (8th Cir. 1995); Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388–89 (8th Cir. 1995), they do not establish personal jurisdiction by themselves, Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 594 (8th Cir. 2011) (holding that "scattered" emails and phone calls and a wire-transfer of money to the forum state were "incidental contacts" that were insufficient to establish personal jurisdiction); Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 923 (8th Cir. 1995) ("The use of interstate facilities, such as telephones or mail, is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." (quotation and internal

quotation marks omitted)). Courts have sometimes applied this jurisprudence even when the emails, phone calls, or mailings are sizable. Burlington Indus. v. Maples Indus., 97 F.3d 1100, 1103 (8th Cir. 1996) (holding that 100 telephone calls from defendant to third party in forum state were "insufficient, alone, to confer personal jurisdiction"); Toro Co. v. Advanced Sensor Tech., Inc., No. 08-248 (DSD/SRN), 2008 WL 2564336, at *3 (D. Minn. June 25, 2008) (holding that 300 emails as part of a national marketing campaign from defendant to forum state were not sufficient by themselves to warrant personal jurisdiction over defendant).

Richard does not address Flaum's argument that emails, phone calls, and mailings are insufficient by themselves to establish minimum contacts. Instead, Richard argues that this Court has personal jurisdiction over Flaum because the alienation of Traci's affection occurred in South Dakota and South Dakota is where Richard felt the effects of Flaum's conduct. When, as here, the plaintiff alleges an intentional tort, courts must consider personal jurisdiction under the three-pronged "effects test," taken from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). See Dakota Indus, 946 F.2d at 1390–91. Although the effects test does not replace the five factors the Eighth Circuit traditionally uses to evaluate personal jurisdiction, the effects test "is one way to evaluate at least the first three factors." Estate of Witko v. Hornell Brewing Co., 156 F. Supp. 2d 1092, 1101 (D.S.D. 2001); Sturgis Area Chamber of Commerce v. Little Sturgis Rally & Races for Charity, Inc., No. CIV. 08-5024-KES, 2008 WL 9358654, at *7–9 (D.S.D. Dec. 19, 2008) (analyzing the first three factors of the Eighth Circuit test "under the framework of the Calder effects test"); see also Oriental Trading Co. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001); Finley v. River N. Records, Inc., 148 F.3d 913, 916–17 (8th Cir. 1998).

In Calder, a California actress filed a libel suit in California state court against two tabloid journalists from Florida. 465 U.S. at 784–86. The actress claimed that the journalists

libeled her in an article they wrote in Florida for the National Enquirer, a national newspaper widely-circulated in California. Id. The Supreme Court held that California had personal jurisdiction over the journalists based on the effects that the journalists' conduct in Florida had in California. Id. at 788–89. "California," the Court explained, was "the focal point both of the story and of the harm suffered." Id. at 789. After all, the story concerned the activities of a California resident whose career was centered in California, it was drawn from California sources, and "the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California." Id. at 788–89. The Supreme Court recently stated that the "crux of Calder was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." Walden, 134 S. Ct. at 1123–24.

Under the effects test the Eighth Circuit derived from Calder, a state may exercise jurisdiction over a defendant based on the in-state effects of the defendant's out-of-state tortious acts "if those acts '(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].'" Viasystems, 646 F.3d at 594 (alteration in original) (quoting Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010)). The effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." Johnson, 614 F.3d at 796 (quoting Dakota Indus., 946 F.2d at 1390–91).

Richard alleges that Flaum committed an intentional tort, so the first factor of the effects test is satisfied. As for the second factor, Richard has offered sufficient evidence that Flaum expressly aimed his alleged tortious conduct at South Dakota. Flaum pursued Traci while she

was residing in South Dakota by telephoning her nearly two hundred times, emailing her over thirty-five times, sending her a gift, and asking her to fly out of South Dakota so that she could meet him. Flaum's South Dakota conduct extended to Traci's friends, whom Flaum contacted allegedly in an attempt to endear himself to Traci. Doc. 14 at ¶¶ 6, 8; Doc. 14-4 at 2. Construing the evidence in Richard's favor as this Court must at this juncture, the conduct Flaum directed towards South Dakota was designed to convince Traci, who was residing in South Dakota, to choose Flaum over Richard. In other words, Flaum's acts were "performed for the very purpose of having their consequences felt in the forum state." Johnson, 614 F.3d at 796 (quoting Dakota Indus., 946 F.2d at 1390–91).

Flaum argues that his contacts with Traci in South Dakota are inconsequential because "[i]f there was any 'affection' to be alienated, that alleged alienation commenced and occurred in California." Doc. 18 at 3. Traci and Flaum may have been having an affair in California; while in California, Flaum and Traci played tennis together, went out to eat, and met up several times. If the information in the packet Richard delivered to Flaum's family is correct, then Flaum had a sexual relationship with Traci in California and was considering leaving his spouse to be with Traci. See Docs. 19-1, 19-2.

Richard's theory of the case, however, is that Flaum did not develop the intent to alienate Traci's affection until she left California and returned to South Dakota in mid-May of 2015. Doc. 15 at 4. An alienation-of-affection claim under South Dakota law has three essential elements: (1) wrongful conduct by the defendant with the specific intent to alienate the affection of the plaintiff's spouse; (2) the loss of affection or consortium of the plaintiff's spouse; and (3) a causal connection between the defendant's intentional conduct and the plaintiff's loss of affection or consortium. State Farm Fire & Cas. Co. v. Harbert, 741 N.W.2d 228, 235–36 (S.D.

2007). The specific intent to alienate the affection of the plaintiff's spouse need not exist "'from the outset'" but rather "may develop at any point during the adulterous relationship." Id. at 235 (quoting Veeder v. Kennedy, 589 N.W.2d 610, 619 n.13 (S.D. 1999)). At the hearing on Flaum's motion to dismiss, Richard's attorney agreed that if this case goes to trial, the jury would need to determine when Flaum developed the intent to alienate Traci's affection. Richard's attorney also agreed that if Flaum developed the requisite intent before May 17, 2015 when Traci returned to South Dakota, then the jury's verdict must be for Flaum. After all, there is no alienation of affection claim under California law,[6] and South Dakota law would not apply to conduct between Flaum and Traci taking place in California before Traci returned to South Dakota. Thus, under Richard's theory of the case, the communications and mailing Flaum directed to South Dakota are the entire basis of his claim.

Flaum also argues that because Traci's cell phone allowed her to answer his calls and receive his emails wherever she went, these communications cannot serve as evidence that he directed his activities at South Dakota.[7] The problem with this argument is that Flaum knew Traci was living in South Dakota when he was calling and emailing her. Moreover, his contacts with South Dakota were not just emails and phone calls to Traci but also included calls to Traci's friends in South Dakota and the gift he sent Traci at her home in Sioux Falls. The evidence is sufficient to establish that Flaum expressly aimed his conduct at South Dakota.

---

[6]California abolished the tort of alienation of affection nearly seventy years ago. Smith v. Pust, 23 Cal. Rptr. 2d 364, 366 (Cal. Ct. App. 1993).

[7]The phone records Richard filed show that Traci received nine calls from Flaum while she was in Iowa, Doc. 14-1 at 8, 11–12, 15, and seven calls from Flaum while she was in Minnesota, Doc. 14-1 at 9–10. The remaining 185 calls were to Traci when she was in South Dakota. Doc. 14-1.

The third factor of the effects test is satisfied here as well. Flaum knew that Richard and Traci were residents of South Dakota and should have realized that the brunt of the harm his conduct caused would be suffered in South Dakota.

At the hearing, Flaum's counsel argued that regardless of the effects test, the Eighth Circuit cases stating that emails, phone calls, and mailings do not generally constitute minimum contacts make jurisdiction here improper. The Eighth Circuit, however, has found jurisdiction under Calder in two cases where the defendants' only contacts with the forum state were phone calls and faxes or phone calls and mailings. Oriental Trading, 236 F.3d 938; Finley, 148 F.3d 913.

Finley was a fraud case in which Arkansas plaintiffs sued a Tennessee corporation for misrepresenting which bands would be playing at a concert the plaintiffs were promoting in Arkansas. 148 F.3d at 914. The Tennessee corporation mailed the plaintiffs promotional materials for the concert and told them over the phone that certain bands and musicians would be performing at the concert. Id. at 916. The plaintiffs eventually discovered that some of the promoted artists and bands would not be appearing at the concert and sued the Tennessee corporation in federal district court in Arkansas. Id. at 915. The Eighth Circuit concluded that the Tennessee corporation's fraudulent conduct was intended to induce commercial activity in Arkansas and that under Calder, the corporation must "reasonably anticipate being haled into court [in Arkansas] to answer for the truth of the statements made." Finley, 148 F.3d at 916 (alteration in original) (quotation and internal quotations omitted).

In Oriental Trading, the defendants, residents of Virginia and directors of a Virginia corporation, tricked the plaintiffs, a Nebraska corporation purchasing goods from the defendants, into paying fabricated customs fees on the goods. 236 F.3d at 941–42. The defendants executed

their fraudulent scheme via telephone and faxes without ever entering Nebraska. Id. at 943. The plaintiff sued the defendants for fraud in Nebraska state court. Id. at 942. Defendants removed the case to federal court and moved to dismiss, arguing that the faxes and phone calls they made to plaintiffs in Nebraska did not constitute sufficient minimum contacts. Id. at 942–43. Relying on Calder and Finley, the Eighth Circuit concluded that by purposely directing their fraudulent faxes and phone calls at residents of Nebraska, the defendants should have realized that the brunt of the harm would be felt there and "should have reasonably anticipated being haled into court there." Oriental Trading, 263 F.3d at 943.

Like Finley and Oriental Trading, this case is based on communications that the defendant aimed at the forum state with the intent that they have an effect there. The communications and gift Flaum sent to South Dakota distinguish this case from cases where the defendant's only connection to the forum state is the consequence of the defendant's conduct. See, e.g., Johnson, 614 F.3d at 796 (finding no jurisdiction under the effects test where the defendant posted an allegedly defamatory statement about the plaintiffs on an internet message board and there was no evidence that either the content of the post or the message board specifically targeted the forum state). Jurisdiction is proper under Calder, Finely, and Oriental Trading.

Exercising personal jurisdiction over Flaum is also consistent with other alienation-of-affection cases. A federal district court in Mississippi aptly summarized the approach courts have taken to personal jurisdiction over an out-of-state defendant sued for alienation of affection:

> In alienation of affection cases directed against a nonresident defendant, courts have generally found that the defendant possesses significant minimum contacts with the forum state where the defendant has directed activity toward a state with the intention of alienating the affections of a spouse who lives there. Such actions as sending letters or emails or making telephone calls into a

> state with the purposes of trying to alienate a spouse's affections have been held sufficient to meet the requirement of minimum contact. Thus, a defendant may be subject to the personal jurisdiction of another state without having ever once been present there.

Bailey v. Stanford, No. 3:11-CV-00040-NBB-SSA, 2012 WL 569020, at *6 (N.D. Miss. Feb. 21, 2012). As the Mississippi district court recognized, emails, phone calls, and mailings sent to the forum state with the intent to alienate the affection of the plaintiff's spouse can constitute minimum contacts. Id. at *6-8 (holding that phone calls and text messages from Ohio defendant to husband in Mississippi were sufficient minimum contacts); Thomas v. Skrip, 876 F. Supp. 2d 788, 797 (S.D. Miss. 2012) (finding personal jurisdiction in alienation-of-affection case based on the Massachusetts defendant's "numerous calls, texts and emails" to the wife in Mississippi); Knight v. Woodfield, 50 So. 3d 995, 1000 (Miss. 2011) (holding that personal jurisdiction existed in alienation-of-affection case where Louisiana defendant sent emails, phone calls, and text messages to wife in Mississippi and plaintiff claimed that these communications were the cause of his injuries); Cooper v. Shealy, 537 S.E.2d 854, 858 (N.C. Ct. App. 2000) (concluding that emails and phone calls South Carolina defendant made to North Carolina husband justified personal jurisdiction in alienation-of-affection case). Like the defendants in Bailey, Skrip, Knight, and Cooper, Flaum created minimum contacts between himself and the forum state by directing communications to the state for the alleged purpose of alienating the affection of the plaintiff's spouse.

Having concluded that Flaum purposefully established minimum contacts with South Dakota, this Court must consider whether exercising personal jurisdiction over him "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co., 326 U.S. at 320). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of

some other considerations would render jurisdiction unreasonable." Id. at 477. The only consideration Flaum raises is that it would be inconvenient to litigate in South Dakota because "[v]irtually anyone who could testify" about his relationship with Traci resides in California. Doc. 10-1 at ¶ 18. But Richard is suing Flaum based on the communications he sent Traci in South Dakota rather than for anything Flaum did in California. Because Richard's claim centers on communications that were received in, and allegedly caused an effect in, South Dakota, the majority of the necessary witnesses will be South Dakota residents, including Richard himself, Traci, and Traci's friends whom Flaum contacted. Although evidence of Flaum and Traci's relationship in California appears relevant to this case, any inconvenience Flaum has in presenting this evidence is not, under these facts, enough to make jurisdiction over him unconstitutional. Furthermore, South Dakota "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (quotation and internal quotation marks omitted). This interest outweighs the minimal inconvenience litigating this case in South Dakota might cause Flaum.

**B. Change of Venue**

Flaum argues in the alternative that this case should be transferred to California under 28 U.S.C. § 1404(a). Section 1404 allows a district court to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice" to "any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). Rather than adopting "an exhaustive list of specific factors to consider" when evaluating a motion to transfer, the Eighth Circuit has directed district courts to "weigh any case-specific factors relevant to convenience and fairness to determine whether transfer is warranted." In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quotation and internal quotation marks omitted). "In general, federal courts give considerable

deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).

Flaum's motion to transfer is premised on the mistaken belief that the "operative facts" of this case occurred in California. Richard's entire case is based on communications that were received in, and allegedly caused an effect in, South Dakota, and Richard through his attorney has conceded that none of the events that took place in California can support any recovery in this case. The California conduct may be relevant, but the operative facts of this case occurred in South Dakota.

Flaum also contends that this case should be transferred to California because the "vast majority" of witnesses reside there. Doc. 11 at 13. Again, this argument lacks force because it assumes that the facts most relevant to Richard's claim occurred in California. Richard's decision to limit his claim to the facts and effects occurring in South Dakota makes it less likely that many witnesses from California will be necessary. Further, as the party moving for the transfer, Flaum has the burden of providing sufficient facts to allow this Court to determine whether the California witnesses' testimony is material. Reid-Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991); see also 15 Charles Alan Wright et al., Federal Practice and Procedure § 3851 (4th ed.) ("The party seeking the transfer must identify, typically by affidavit, the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover."). Flaum identified two specific witnesses who reside in California: Dr. Jerry Mients, the therapist Traci and Flaum met with on May 1, 2015 and Nancy Berryhill, a friend of Traci's. Doc. 10-1 at ¶ 18. The only other information Flaum provides about Mients and Berryhill is that they could "testify as to [his] relationship with Traci." Doc. 10-1 at ¶ 18.

This limited information does not justify transferring the case to California. Presumably both Mients and Berryhill could be deposed in California for use at trial in South Dakota. As the record stands now, transferring this case would merely shift the inconvenience from the witnesses who might testify about Flaum and Traci's relationship in California to the witnesses who could testify about their relationship in South Dakota.

In addition to the argument about Mients and Berryhill, Flaum asserts that transfer is warranted because the members or employees of the country clubs and hotels he and Traci visited reside in California. Given that Richard's claim is limited to the communications Flaum sent to South Dakota, the testimony from these unnamed witnesses is of limited relevance and their presence in California does not justify transferring this case. Flaum has failed to carry his burden of showing that a transfer to California is warranted.

## III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Flaum's Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a), Doc. 10, is denied.

DATED this 22nd day of November, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE